**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ELISA VAZQUEZ HERRERA, *Plaintiff*, v. QUALITY CHEVROLET GMC OF ENGLEWOOD, INC., *Defendant*. | Civil Action No. 24-08536 **OPINION** June 30, 2025 |

**SEMPER**, District Judge.

The current matter comes before this Court upon Elisa Vazquez Herrera's ("Plaintiff") Motion for Default Judgment against Quality Chevrolet GMC of Englewood, Inc. ("Defendant" or "Quality") pursuant to Federal Rule of Civil Procedure ("Rule") 55(b)(2). (ECF 6.) The Court has decided this motion upon submission, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Rule 78.1. For the reasons stated below, Plaintiff's motion is **GRANTED**.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff's claims stem from alleged discriminatory treatment and harassment while Defendant employed her for a few months in early 2024. Plaintiff is a Hispanic female (ECF 1, "Compl." ¶ 6) who was employed as a receptionist by Defendant from January 13, 2024 to April 29, 2024. (*Id.* ¶¶ 15, 45.)  Plaintiff alleges that she experienced a discriminatory and hostile work environment over the course of her employment. (*Id.* ¶ 16.) Plaintiff alleges that she was subjected to sexual harassment by Defendant's other employees based on her gender and sexual orientation (*see id.* ¶¶ 18-23, 26-27, 31-34, 44), and her race and national origin (*see id.* ¶¶ 35-42). Plaintiff

further alleges that on or about January 18, 2024, one of Defendant's employees attempted to show Plaintiff an explicit photograph at a closer angle that Plaintiff had accidentally glanced at. (*Id.* ¶¶ 22-23). Plaintiff complained to her supervisor about the incident. (*Id.* ¶ 24.) Plaintiff's supervisor failed to take any remedial or corrective action following Plaintiff's complaint about sexual harassment. (*Id.* ¶ 24.) He also began to treat Plaintiff poorly following Plaintiff's complaint. (*See id.* ¶¶ 25.) Plaintiff also alleges that her supervisor witnessed another incident of sexual harassment in which a male employee told her to "squat next time" because when she bent over to put yogurt in a refrigerator she "showed [him] all your goodies." (*Id.* ¶ 27.) Plaintiff's supervisor also allegedly participated in the sexual harassment of Plaintiff when he asked Plaintiff if she told a different male employee that she was "not straight" in order to "to make [him] go away." (*Id.* ¶ 34.) On or about April 29, 2024, Defendant terminated Plaintiff, allegedly in retaliation because Plaintiff "engag[ed] in protected activity." (*Id.* ¶ 45.) Plaintiff alleges she suffered loss of income, salary, bonuses, benefits, and other compensation, as well as non-pecuniary losses, from the alleged harassment and discrimination. (*Id.* ¶ 48.)

Plaintiff filed the instant action on August 19, 2024 (ECF 1.) Plaintiff asserts the following causes of action against Defendant: (1) discrimination under Title VII of the Civil Rights Act of 1962, 42 U.S.C. Sections 2000e et seq. ("Title VII") (Count I); (2) retaliation under Title VII (Count II); discrimination under the New Jersey Law Against Discrimination ("LAD") (N.J. Stat. Ann. § 10:5-12) (Count III); and retaliation under the LAD (N.J. Stat. Ann. § 10:5-12(d)) (Count IV). (*See generally* Compl.) Plaintiff seeks damages related to the alleged discrimination and harassment. (*See id.*)

Defendant failed to answer or otherwise defend against the Complaint. On October 9, 2024, Plaintiff petitioned the Clerk of the Court for an entry of default against Defendant pursuant to

Rule 55. (ECF 5.) The Clerk of the Court entered default against Defendant on October 16, 2024. Defendant has not challenged the default, opposed this motion, or appeared in this action. On October 17, 2024, Plaintiff moved for default judgment against Defendant. (ECF 6.) On May 13, 2025, the Court requested supplemental briefing regarding (a) its subject matter jurisdiction over the action and (b) Plaintiff's damages. (ECF 7.) On June 13, 2025, Plaintiff filed a declaration and brief in further support of jurisdiction and damages. (ECF 10.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) "authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008). Before the Court grants a motion for default judgment, however, it must ensure, *inter alia*, (1) that personal jurisdiction exists over the Defendants and (2) "that entry of default under Rule 55(a) was appropriate." *Gov't Emps. Ins. Co. v. Pennsauken Spine & Rehab P.C.*, No. 17-11727, 2018 WL 3727369, at *2 (D.N.J. Aug. 6, 2018). Where the Court has jurisdiction, because the entry of default judgment prevents a decision on the merits, the mere fact of default does not entitle a plaintiff to judgment. Rather, "[i]t is well settled in this Circuit that the entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)).

Once a party has defaulted, the "consequence of the entry of a default judgment is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citing 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, § 2688 at 444 (2d ed. 1983)). An entry of default judgment requires that the Court determine whether a sufficient cause of action has been

3

stated "since a party in default does not admit mere conclusions of law." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008). After a cause of action has been established, district courts must then determine whether the entry of default judgment would be proper by considering: (1) whether the party subject to default has a meritorious defense, (2) whether there is prejudice to the plaintiff if default judgment is denied, and (3) whether the default was due to the defendant's culpable conduct. *See Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *Hritz*, 732 F.2d at 1181.

### III.  ANALYSIS

#### A. Jurisdiction

"Before entering a default judgment as to a party 'that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 WL 273656, at *2 (D.N.J. Jan. 22, 2015) (quoting *Ramada Worldwide, Inc. v. Benton Harbor Hari Ohm, LLC*, No. 08-3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008)).

The Court has both subject matter jurisdiction over this dispute and personal jurisdiction over Defendant.  Subject matter jurisdiction here originates in the federal question presented in Counts I and II of the Complaint under 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the constitution, laws, or treaties of the United States."  In her June 13, 2025 supplemental filing to the Court, Plaintiff clarified that Defendant is classified as an "employer" under Title VII[1] and therefore subjected to liability under that statute. (ECF 10-7 at 3.) The Court also retains subject matter over the New Jersey state law

---

[1] Under Title VII, an "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b).

claims in Counts III and IV via supplemental jurisdiction under 28 U.S.C. § 1367(a), which states that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." (*See* Compl. ¶¶ 51-63.)  "Supplemental jurisdiction is appropriate when there is a common nucleus of operative fact and whether the claims are part of the same case or controversy under Article III." *Testa v. Hoban*, No. 17-1618, 2018 WL 623691, at *6 (D.N.J. Jan. 30, 2018) (internal citations and quotations omitted).  Here, Plaintiff's claims all arise from her allegations that the Defendant discriminated against her during her employment (*See* Compl. ¶¶ 51-63.)  Accordingly, the Court finds that the State law claims (Counts III and IV) share a "common nucleus of operative fact" with Plaintiff's federal claims against Defendant such that the claims in Counts III and IV "are part of the same case or controversy." *Testa*, 2018 WL 623691, at *6.  The Court will therefore exercise supplemental jurisdiction over Plaintiff's state law claims against Defendant at this time.

The Court also has personal jurisdiction over Defendant.  To establish general personal jurisdiction, a plaintiff must show that the defendant's connections to the forum state are "so 'continuous and systematic' as to render [the corporation] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). "With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (alteration in original) (internal quotation omitted).  Here, Plaintiff alleges that Defendant is incorporated in New Jersey and authorized to

conduct business in New Jersey (Compl. ¶ 7.) Because Defendant is at "home" in New Jersey, this Court has personal jurisdiction over Defendant.

### B. Service of Process

"Before the Court can enter default judgment, it must find that process was properly served on the Defendant[s]." *Teamsters Pension Fund*, 2011 WL 4729023, at *2 (citing *Gold Kist, Inc. v. Laurinburg Oil Co.*, Inc., 756 F.2d 14, 19 (3d Cir. 1985)). As a corporation, Defendant could be properly served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process[.]" Fed. R. Civ. P. 4(h)(1)(B). Defendant was served on September 16, 2024 by leaving a copy of the summons and complaint with a manager. (ECF 4.) The affidavit of service states that Defendant's manager orally informed the process server that they were authorized to accept service. (*Id.*) Therefore, the Court is satisfied that service on Defendant was proper.

### C. Right to Sue

To file a Title VII claim, a claimant must first "submit information to the EEOC and . . . wait a specified period before commencing a civil action" in federal court. *Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 551 (2019). If the EEOC declines to proceed on the claim, the corresponding action in federal court must be commenced within 90 days of receipt of a "right-to-sue" letter from the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1). The 90-day requirement is a statute of limitations, rather than a jurisdictional prerequisite. *See Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F. 3d 236, 239-40 (3d Cir. 1999). Here, Plaintiff alleges that she "fully complied with all administrative prerequisites for the commencement of this action." (Compl. ¶ 5). Plaintiff also submitted to the Court the EEOC right-to-sue letter, which is dated August 7, 2024, 12 days before

the commencement of this action. (*See* ECF 10-1, ECF 1.) Based on the record before the Court, the Court concludes that Plaintiff has complied with Title VII's procedural requirements.

### D. Sufficiency of Plaintiff's Causes of Action and Damages

After establishing that this Court has jurisdiction, and that service was proper, the Court must determine whether the Complaint states proper causes of action.

#### 1. Counts I and III: Discrimination Under Title VII and the New Jersey Law Against Discrimination

Plaintiff alleges that Defendant "subject[ed] Plaintiff to a hostile work environment, terminating and otherwise discriminating against Plaintiff as set forth herein because of Plaintiff's sex, sexual orientation, race, color, and national origin" (Compl. ¶ 54) in violation of Title VII and the LAD.[2]

Title VII prohibits an employer from discriminating against an employee "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a hostile work environment claim under Title VII or the LAD, a plaintiff must show: (1) she suffered discrimination based on a protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) a basis to hold the employer vicariously liable. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (citation omitted). A LAD

---

[2] Although Plaintiff labels Counts I and II as claims for discrimination rather than hostile work environment, Plaintiff alleges under Count I that the Defendant "subject[ed] Plaintiff to a hostile work environment." (Compl. ¶ 54.) Moreover, in Plaintiff's brief in support of her motion for summary judgment (ECF 6-2, "Br."), Plaintiff argues that the "particular cause of action is hostile work environment based on Plaintiff's sex, sexual orientation, race, color, and national origin." (Br. at 5.) For these reasons, the Court treats Plaintiff's discrimination claims as hostile work environment claims.

7

hostile work environment claim contains only the first four elements of a Title VII hostile work environment claim. *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005) (citations omitted).

### i. Hostile Work Environment Based on Sexual Harassment

The Court starts with Plaintiff's argument that she had been the subject of a hostile work environment based on sexual harassment.[3] First, Plaintiff plausibly alleges that the alleged hostile acts occurred because of her sex. "The intent to discriminate on the basis of sex in cases involving sexual propositions, innuendo, pornographic materials, or sexual derogatory language is implicit, and thus should be recognized as a matter of course." *Martinez v. City of Union City*, No. 21-11111, 2021 WL 5195708, at *4 (D.N.J. Nov. 8, 2021) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 n. 3 (3d Cir. 1990), *superseded by statute on other grounds*). "'[T]he ordinary tribulations of the workplace,' however, 'such as the sporadic use of abusive language, gender-related jokes, and occasional teasing' cannot evidence a hostile work environment." *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Plaintiff's allegations of a hostile work environment based on sex discrimination go beyond the "ordinary tribulations of the workplace." *Id.* Plaintiff alleges that her male coworkers and supervisors "slapp[ed] each other's genitals and buttocks" (Compl. ¶ 20); "openly discussed topics of explicit sexual nature, such as 'eating ass'" (*id.*); commented that Plaintiff's body "looks good" (*id.* ¶ 21); displayed an explicit photo of genitalia at work (*id.* ¶ 22-23); told Plaintiff she "showed [her] goodies" and to "squat next time" when she put food in the fridge (*id.* ¶ 27); repeatedly commented on Plaintiff's sexual orientation (*id.* ¶ 32-34); asked Plaintiff if she was a stripper (*id.* ¶ 41); and frequently called Plaintiff a "princess." (*Id.* ¶ 18.)

---

[3] Sexual harassment is defined as "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature." 29 CFR § 1604.11(a). Title VII recognizes sex discrimination that creates a hostile or abusive work environment. *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 63–67 (1986).

As to the second factor, these allegations are sufficient to show that the harassment was "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment' that permeates the workplace." *Graves v. Ancora Psychiatric Hosp.*, Civ. No. 10-369, 2012 WL 6153428, at *4 (D.N.J. Dec. 11, 2012) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)).

Third, Plaintiff alleges that the harassment detrimentally affected her by causing emotional distress, physical ailments, and the loss of income. (Compl. ¶¶ 46-48.) The Court "determine[s] if the discrimination as alleged by Plaintiff would detrimentally affect a reasonable person of the same sex in that position by evaluating several factors, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Roth v. Clearchoice Mgmt. Servs., LLC*, No. 21-20440, 2022 WL 4011036, at *5 (D.N.J. Sept. 2, 2022) (quoting *Ivan v. County of Middlesex*, 595 F. Supp.2d. 425, 451 (D.N.J. Jan. 21, 2009)). Here, the sexual harassment was alleged to be frequent, distressing, and interfered with the Plaintiff's work (*See, e.g.*, Compl. ¶¶ 27, 29-30). Further, Plaintiff alleges that Guzman, her supervisor, began to treat her poorly after she complained about sexual harassment. (*Id.* ¶ 35.) The conduct set forth in these allegations would lead a reasonable person in Plaintiff's position to be detrimentally affected.

Finally, Plaintiff has alleged a basis to hold her employer, the Defendant, vicariously liable for the hostile work environment. Under Title VII, an employer can be held vicariously liable "for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Hitchens v. Montgomery Cty.*, 278 F. App'x 233, 235–36 (3d Cir. 2008) (quoting *Faragher*, 524 U.S. at 807). If, however, a plaintiff's co-worker is charged to create

9

the hostile work environment, instead of the plaintiff's supervisor, "liability exists [only] where the [employer] knew or should have known of the harassment and failed to take prompt remedial action." *Hitchens*, 278 F. App'x at 236 (quoting *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1999)) (internal quotation marks omitted). Under the LAD, an employer will be liable for compensatory damages for a hostile work environment in three circumstances: (1) when the employer grants a supervisor authority to control the workplace and the supervisor abuses that authority to create a hostile environment, *Lehmann v. Toys 'R' Us, Inc.*, 132 N.J. 587, 620 (N.J. 1993); (2) when the employer negligently manages the workplace by failing to enact anti-harassment policies and mechanisms, *id.* at 621-22; or (3) when the employer has actual or constructive knowledge of the harassment and fails to take effective measures to end the discrimination, *id.* at 622-23.

Here, Plaintiff has alleged vicarious liability. Plaintiff alleges that her supervisors Jesus Guzman and Carlos Oritz made comments that contributed to the hostile work environment. (*See* Compl. ¶¶ 8-11, 19-20, 24-27, 34.) Plaintiff also alleges that her co-workers Kacper Polus, Nelly Gomez, and Peter Daley played a role in creating the hostile work environment (*see* Compl. ¶¶ 12-14, 17-18, 21, 31-33, 22-24, 27), and that Guzman was aware of the harassment but failed to take action (*see id.* ¶¶ 19, 24-25, 28, 34). For the foregoing reasons, Plaintiff sufficiently pled a cause of action for a hostile work environment due to sexual harassment under Title VII and the LAD.

      **ii.**   **Hostile Work Environment Based on National Origin and Race Discrimination**

Plaintiff also claims that she was subject to a hostile work environment based on national origin, color, and race.[4] Plaintiff alleges that she is Hispanic (Compl. ¶ 6) and includes a number

---

[4] Plaintiff's brief, but not Complaint, also references discrimination based on age. (Br. at 7.) For the same reasons stated in this section, Section III.D.1(ii), Plaintiff has failed to allege age discrimination.

10

of allegations of discriminatory language made by her co-worker Polus. These allegations include Polus' refusing to accommodate Spanish-speaking customers and stating "they'll learn" English (*id.* 36); Polus' statements that Plaintiff looked "too cultured to be from Harlem" and that "only animals live in Harlem" (*id.* 39); and Polus's comment to Plaintiff asking if she was "born in a barn." (*Id.* 40.)

The Court cannot find a basis for liability against Quality based on these comments. Plaintiff does not allege that Polus was a supervisor. (*See generally* Compl.) Therefore, to find Quality liable under Title VII, Plaintiff must allege that Quality "knew or should have known of the harassment and failed to take prompt remedial action." *Hitchens*, 278 F. App'x at 236. To plead liability under the LAD, Plaintiff must allege that Quality had actual or constructive knowledge of the harassment and failed to take constructive measures to end it, *Lehmann*, 132 N.J. at 622-23, or that Quality negligently managed the workplace by failing to enact anti-harassment policies and mechanisms, *id.* at 621-22. While Plaintiff alleges that her supervisor Guzman was aware of the sexual harassment against her, *see supra* Section III.D.1(i), she does not allege that her supervisors Guzman and Ortiz, or anyone else employed by Quality, had actual or constructive knowledge of Polus' other comments, or that Quality negligently managed the workplace. (*See generally* Compl.) Because there is no basis for liability against Quality based on Polus' above-mentioned comments, the Court will not address the other elements of a Title VII or LAD claim.

### 2. Counts II and IV: Retaliation Under Title VII and the New Jersey Law Against Discrimination

Plaintiff additionally alleges that Defendant violated Title VII and the LAD by retaliating against her for reporting and opposing actions forbidden under those laws. (Compl. ¶¶ 55-57 (citing 42 U.S.C. 2000e-3(a)), 61-63 (citing N.J. Stat. Ann. § 10:5-12 (d)).) "Because New Jersey courts have frequently looked to case law under Title VII for guidance in developing standards to

govern the resolution of LAD claims," the Court will analyze the Title VII and NJLAD retaliation claims together. *Stallone v. Camden Cty. Tech. Sch. Bd. of Educ.*, Civ. No. 12-7356, 2013 WL 5178728, at *3 (D.N.J. Sept. 13, 2013) (citing *Carmona v. Resorts Int'l Hotel, Inc.*, 915 A.2d 518 (N.J. 2007)); *see also Dalton v. New Jersey*, Civ. No. 174094, 2018 WL 305326, at *10 (D.N.J. Jan. 5, 2018) (citations omitted).

To prevail on a retaliation claim, a plaintiff must demonstrate that (1) they engaged in a protected activity; (2) they were subject to an adverse action after engaging in that activity; and that (3) there is a causal link between the protected activity and the adverse action. *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 800 (3d Cir. 2003) (*per curiam*) (citing *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997)); *see also Lombard v. New Jersey Dep't of Transp.*, Civ. No. 1801319, 2018 WL 5617553, at *7 (D.N.J. Oct. 30, 2018); *Dalton*, 2018 WL 305326, at *10.

Plaintiff sufficiently alleges that she engaged in a protected activity by reporting sexual harassment to her supervisor, Guzman. (Compl. ¶ 24.) *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (quoting *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)) ("[P]rotected 'opposition' activity includes not only an employee's filing of formal charges of discrimination against an employer but also 'informal protests of discriminatory employment practices, including making complaints to management.'") Plaintiff further alleges that she was terminated as a result of engaging in that protected activity, *i.e.* reporting sexual harassment to Guzman. (Compl. ¶ 45.) Termination is an adverse employment action. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

Finally, Plaintiff has alleged that there is a causal link between the protected activity and adverse action. Although "temporal proximity alone is not enough to establish the requisite causal link," *Lindsey v. New Jersey Dep't of Corr.*, No. 04-3815, 2007 WL 836667, at *13 (D.N.J. Mar.

14, 2007) (citing *Cardenas v. Massey,* 269 F.3d 251, 264 (3d Cir. 2001)), Plaintiff's further allegations that Guzman witnessed instances of sexual harassment against Plaintiff (*see* Compl. ¶¶ 26-28, 34) and that Guzman was aware of Polus's problematic behavior (*see id.* ¶ 19) but did nothing to stop it support the Court's conclusion that Plaintiff alleged a causal link between the protected activity and adverse action. Plaintiff has therefore stated a claim for retaliation under Title VII and the LAD.

### E.  Whether The Entry of Default Judgment Would Be Proper

Other than Plaintiff's failure to plead a Title VII or LAD claim based on race, color, or national origin discrimination, Defendant has no meritorious defense against Plaintiff's Title VII and LAD claims based on the limited record before the Court. *See e.g., Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (finding no meritorious defense where court could not determine its existence since defendant did not respond). Defendant was properly served and failed to appear, defend, or otherwise respond to the complaint. *See supra.* Plaintiff is clearly prejudiced by Defendants' failure to respond as it has been prevented from prosecuting its case and seeking relief. *See Gowan v. Cont'l Airlines, Inc.*, No. 10-1858, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012) ("Plaintiff will suffer prejudice if the Court does not enter default judgment as Plaintiff has no other means of seeking damages for the harm caused by Defendant.").

Similarly, absent any evidence to the contrary, "the Defendant's failure to answer evinces the Defendant's culpability in default." *Teamsters Pension Fund of Phila.*, 2011 WL 4729023, at *4. In this case, there is nothing before the Court to show that Defendants' failure to respond was not willfully negligent. *See id.* (citing *Prudential Ins. Co. of America v. Taylor*, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009)) (finding that when there is no evidence that the

13

defendant's failure to answer the complaint was due to something other than its own willful negligence, the defendant's conduct is culpable and default judgment is warranted). Accordingly, the Court will enter default judgment against Defendant as to liability.

**F.  Relief**

Although the facts pled in the Complaint are accepted as true for the purpose of determining liability, the plaintiff must prove damages. *Moroccanoil Inc. v. JMG Freight Group LLC*, No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015). The Court "has considerable latitude in determining the amount of damages." *Trucking Emps. of N. Jersey Welfare Fund, Inc.–Pension Fund v. Caliber Auto Transfer, Inc.*, No. 08–2782, 2009 WL 3584358, at *3 (D.N.J. Oct. 27, 2009) (citing *Jones v. Winnepesaukee Realty*, 990 F.2d 1, 4 (1st Cir. 1993)). Federal Rule of Civil Procedure 55(b) provides that "the court may conduct hearings . . . to determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B). However, the Court need not conduct a hearing so "'long as it ensure[s] that there [is] a basis for the damages specified in the default judgment.'" *Trucking Emps.*, 2009 WL 3584358, at *3 (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)).

To prove damages here, Plaintiff submitted a declaration (ECF 10, "Pl. Decl."); 2024 W-2 forms demonstrating her pay while employed by Defendant and at a subsequent employer (ECF 10-3, ECF 10-5[5]); evidence of job applications following the termination of her employment with Defendant (ECF 10-4); and provider notes from Plaintiff's psychotherapy treatment from February 22, 2024, February 27, 2024, March 12, 2024, and April 23, 2024 (ECF 10-6). Plaintiff also submitted a brief in support of damages. (ECF 10-7, "Damages Br.") The Court is satisfied that it

---

[5] Although some of the language in this exhibit is unclear, the reported wages are legible.

can make an appropriate damages determination based on this evidence and declines to conduct a hearing.

Plaintiff seeks back pay of $39,040 (Pl. Decl. ¶ 21) and compensatory damages of $200,000 (Damages Br. at 5-7). Plaintiff also seeks punitive damages (*id.* at 6) and further requests leave to submit attorney's fees once a judgment has been satisfied. (*Id.*)

The Court finds that Plaintiff is entitled to back pay of $20,320. At Quality, Plaintiff made $18 per hour and worked full time, for 40 hours per week. (Pl. Decl. ¶¶ 9-10.) Quality terminated Plaintiff on April 29, 2024. (Compl. ¶ 45, Pl. Decl. ¶ 11.) Upon termination, Plaintiff began applying for jobs. (Pl. Decl. ¶ 12, Exhibit D.) In late November 2024, Plaintiff began working at Hudson Hyundai, LLC ("Hudson"). (*Id.* ¶ 13.) At Hudson, Plaintiff made $17 per hour and worked a full-time, 40-hour workweek. (*Id.* ¶¶ 15-16.) In December 2024, after working at Hudson for approximately one full month, Plaintiff "left" Hudson. (*Id.* ¶ 17.) Since leaving Hudson, Plaintiff has continued applying for jobs. (*Id.* ¶ 19, Exhibit D.) Plaintiff seeks back pay from the date of termination to the submission of her declaration. (Damages Br. at 5.)

The Court awards Plaintiff back pay from the time of her termination by Quality through the time of her departure from Hudson, but not beyond that time. As Plaintiff acknowledges (*see* Damages Br. at 5), Plaintiff has a statutory duty under Title VII to mitigate her lost wages. *See Ford Motor Co. v. EEOC,* 458 U.S. 219, 231–32 (1982) (citing 42 U.S.C. § 2000e–5(g)). Failure to mitigate can be shown by proving that there was substantially equivalent work available to that previously held by the plaintiff and that the plaintiff failed to exercise reasonable diligence to obtain it. *Le v. Univ. of Pa.,* 321 F.3d 403, 407 (3d Cir. 2003). Here, the Court agrees with Plaintiff that she made efforts to retain new employment following her termination. (*See* Pl. Decl. Exhibit D.) Those efforts eventually paid off, as Plaintiff did obtain employment at Hudson. (*See id.* ¶ 13.)

15

However, Plaintiff represents, without further explanation, that she "left" Hudson after only a month. (*Id.* ¶ 17.) Based on the submissions before the Court, the Court concludes that there was substantially available work available to Plaintiff—her job at Hudson—and yet she chose to leave it. As such, the Court does not extend Plaintiff's back pay to the time period following her departure from Hudson. Plaintiff is entitled to $20,320 of damages in back pay, which is equivalent to (a) 28 weeks of back pay at $720 per week (Pl. Decl. ¶ 10), totaling $20,160 and (b) the salary difference of $1.00 per hour at Hudson for four weeks of work at 40 hours per week, totaling $160.

Plaintiff is also entitled to compensatory damages, although not in the amount she seeks. *See* 42 U.S.C. § 1981a(b)(3); *Hurley v. Atlantic City Police Dep't*, 933 F. Supp. 396, 424 (D.N.J. 1996). "An award of between $5,000 and $35,000 is appropriate for 'garden-variety emotional distress claims.'" *Riley v. Kohan Retail Inv. Grp.*, No. 23-1834, 2024 WL 3597109, at *5 (M.D. Pa. July 30, 2024) (quoting *Sowell v. RAV Investigative & Sec. Servs., Ltd.*, No. 15-3657, 2016 WL 3014881, at *6 (E.D. Pa. May 26, 2016)) (collecting cases). Plaintiff has alleged that "[a]s a result of Defendant's discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments," and that she avoids men, suffers nightmares and has had trouble sleeping. (Compl. ¶ 47; *see also* Pl. Decl. ¶¶ 23-27.) Plaintiff further represents that she sought therapy from a clinic throughout and after her employment at Quality in which she discussed the harassment she experienced and her resulting poor emotional state. (Pl. Decl. ¶ 22; ECF 10-6.) Case notes from psychotherapy sessions by Plaintiff's social worker corroborate Plaintiff's statements that she suffers emotional distress. (*See* ECF 10-6.) Based on this evidence, the Court finds that compensatory damages of $10,000 are proper. *See Hampton v. Prot. Plus Sec. Corp.*, No. 14-6982, 2017 WL 714351, at *5 (D.N.J. Feb. 23, 2017) (granting an award of $10,000 in compensatory damages to a Plaintiff for Title VII and LAD

16

claims). This amount takes into consideration both Plaintiff's genuine emotional distress while also considering the short amount of time that Plaintiff worked at Quality, and the fact that Plaintiff has failed to allege Quality's liability for Polus' comments relating to Plaintiff's ethnicity.

Punitive damages are available under Title VII and the LAD only "if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference." 42 U.S.C. § 1981a(b)(1); *see also Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 122–23 (3d Cir. 1999*)*. "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kant v. Seton Hall Univ.*, 279 F. App'x 152, 158 (3d Cir. 2008) (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999)). Although Plaintiff alleges one supervisor was involved in the discrimination, Plaintiff has not alleged that Quality or her supervisors knew that they may be acting in violation of federal law or that they failed to make good faith efforts to comply with Title VII. *See id.* For those reasons, Plaintiff's request for punitive damages is denied.

In total, the Court grants Plaintiff an award of $30,320 in combined back pay and compensatory damages. The Court will enter default judgment against Defendant accordingly.

## IV.  CONCLUSION

For the reasons stated above, Plaintiff's Motion for Default Judgment (ECF 6) is **GRANTED** based on Plaintiff's allegations of a hostile work environment due to sexual harassment. An appropriate order follows.

                                                    */s/ Jamel K. Semper*
                                                    **HON. JAMEL K. SEMPER**
                                                    **United States District Judge**

Orig: Clerk
cc: Stacey D. Adams, U.S.M.J.
      Parties